IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN COOPER, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>ILLINOIS DEPARTMENT OF NATURAL )<br>RESOURCES, )<br>)<br>   Defendant. ) | Case No. 09-cv-3333 |

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

The Court grants the Defendant's Motion to Dismiss [d/e 39] for the following reasons.

### I. BACKGROUND

This is a racial discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the Illinois Human Rights Act, 775 ILCS 5/2-102, *et seq.*; 42 U.S.C. § 1981; and 42 U.S.C. § 1983.  The Plaintiff seeks compensatory damages, punitive damages, and lost wages.

Plaintiff Kevin Cooper was an employee of Defendant Illinois Department of Natural Resources ("IDNR") from December 2007 through March 2008. The Plaintiff was employed as an Office Coordinator at Kankakee River State Park. Cooper was one of two black employees at the Park.

The Plaintiff states that he was hired after interviewing at the IDNR headquarters, but that upon meeting with his supervisor, Kathy Pangle, she indicated that she was unhappy with his hiring. Pangle was displeased that she did not have input in the hiring decision. The Plaintiff states that "Pangle continuously made inappropriate comments about [his] manner of dress and lifestyle away from work" and the Plaintiff perceived this as relating to his race and color. Pl.'s First Am. Compl. [d/e 14], 3.

In his First Amended Complaint, the Plaintiff asserts that when Pangle asked for his driver's license during the intake process he informed her that he did not have one and offered to resign immediately. Pangle informed Cooper that a license was not required for the position. The

Plaintiff alleges that Pangle told him that he could drive to work, but that he should vary his parking location to avoid detection by the Conservation Police.

However, the Plaintiff stated the following in the original Complaint he filed in the case:

> After reassuring me that I did not have to resign [Pangle] called the [S]tate of Illinois in Springfield and reported the information. *I received a call in the office weeks later and the person on the phone stated that they were with the conservation police and that I can no longer drive to work.* At this time it was too late to return to my previous job so I requested that one of my co-workers assist me in getting to work. Levi Bray helped me by giving me a ride to work until Mr. Bray had a heart attack and was no longer available to help me for about five weeks.

Complaint [d/e 1], 1 (emphasis added). The Plaintiff also indicated in the original Complaint that the he drove to work on a suspended license two days after Mr. Bray began working again.

Below is an excerpt from the First Amended Complaint, describing the events that day.

> [ ]   Upon information and belief, on or about February 26, 2008, Pangle arranged a meeting with the Conservation Police in an attempt to catch COOPER driving to work on a suspended license.
>
> [ ]   On or about February 26, 2008, COOPER witnessed Pangle in a meeting with Conservation Police Officers. COOPER was subsequently pulled over by the conservation police and arrested for driving on a suspended license.

[ ]	Conservation Police Officers alleged that a subsequent search of the [*sic*] COOPER's car revealed trace elements of marijuana, however, these allegations have not been substantiated in any subsequent proceedings.

[ ]	On or about March 3, 2009, COOPER was informed by Pangle that he would be terminated. On that same date, COOPER met with a representative from the IDNR who informed COOPER that he was detailed to home with pay until further notice. COOPER was subsequently terminated.

Pl.'s First Am. Compl. [d/e], 3-4.

The Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on January 13, 2009. Less than two weeks later, the EEOC issued the Plaintiff a Dismissal and Notice of Rights letter, informing him of his right to sue. This action was filed on April 22, 2009 in the United States District Court for the Northern District of Illinois. The case was transferred to this Court on December 21, 2009.

## II. LEGAL STANDARD

For a complaint to survive a motion to dismiss under Rule 12(b)(6) it must "contain 'enough facts to state a claim for relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right

to relief beyond the speculative level." *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009), *(*quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

"A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur*, 581 F.3d at 602 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

The Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [his] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### III. ANALYSIS

A. Title VII and Illinois Human Rights Act Claims

A plaintiff bringing a race discrimination claim under either Title VII or the Illinois Human Rights Act[1] may proceed under either the

---

[1] Claims under the Illinois Human Rights Act are analyzed under the same standards as Title VII claims. *See Bd. of Trustees of S. Ill. Univ. v. Knight*, 163 Ill. App. 3d 289, 294 (5th Dist. 1987).

direct or the indirect method. *See Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1044 (7th Cir. 2000). Under the direct method, a plaintiff would need to show evidence that points directly to a discriminatory reason for the action. *See Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008). To make out a prima facie case under the direct method, a plaintiff would need to show (1) that he is a member of a protected class, (2) that he was meeting legitimate employer expectations, (3) that he suffered an adverse employment action, and (4) that similarly situated workers outside the protected class were treated more favorably. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 364 (7th Cir. 2009).

 A "plaintiff may plead himself out of court by including factual allegations which, if true, show that his legal rights were not invaded." *Endsley v. City of Chicago*, 230 F.3d 276, 284 (7th Cir. 2000). It is appropriate to dismiss a civil rights employment case at the pleading stage if a plaintiff alleges that he was terminated because of his own misconduct. *Cf. Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir.

2001).  The Plaintiff has demonstrated that his own unlawful conduct formed the basis of his employer's decision to terminate him.  He has admitted that he was driving with a suspended license and that he was arrested for this crime.  Therefore, the Title VII and Illinois Human Rights Act claims will be dismissed.

B. Plaintiff's Section 1981 and 1983 Claims

Section 1981 of the Civil Rights Act prohibits racial discrimination in the making and enforcing of contracts.  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 176-77 (1989).  Section 1983 is the exclusive remedy for enforcement of Section 1981 claims against state actors.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989).

The states are immune to suits in federal court under the Eleventh Amendment.  U.S. Const. amend. XI; *Blatchford v. Native Vill. of Noatak,* 501 U.S. 775, 779 (1991).  State agencies also enjoy sovereign immunity, because claims against the agencies are treated as claims against the state.  *See Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 908 (7th Cir. 1991).

There are only two ways that a state may be subject to suit in federal court: (1) Congress abrogates sovereign immunity through statutory enactment, or (2) a state may expressly waive sovereign immunity and agree to be sued in federal court.

Congress did not abrogate the states' Eleventh Amendment immunity by enacting Section 1981 and 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67 (1989); *Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 776 (7th Cir. 1999). The State of Illinois has not consented to the suit, and has vigorously invoked Eleventh Amendment immunity. *See* Memorandum in Support of Motion to Dismiss [d/e 40], 4-6. Consequently, the Defendant is immune and the Plaintiff's Section 1981 and Section 1983 claims will be dismissed.

## IV. CONCLUSION

*Ergo*, the Defendant's Motion to Dismiss [d/e 39] is ALLOWED. This case is dismissed with prejudice. The Clerk of the Court shall close this case.

IT IS SO ORDERED.

ENTER: May 28, 2010

FOR THE COURT:                              s/Richard Mills
                                            United States District Judge